EDWARD FANDRICH, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, INC., Defendant-Appellee.

(Nos. 58005, 58207 cons.;

First District (3rd Division)—December 19, 1974.

*Rehearing denied January 16, 1975.*

304

A. Denison Weaver, of Chicago, for appellant.

C. Roy Peterson, Richard E. Mueller and Hugh C. Griffin, all of Lord, Bissell & Brook, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from an action brought under the Structural Work Act (Ill. Rev. Stat. 1965, ch. 48, pars. 60—69) and common law negligence. The plaintiff, Edward Fandrich, was injured when the boom and jib of a construction crane fell on him, but a jury found for the defendant, Allstate Insurance Company, Inc. Judgment for defendant was entered upon the verdict by the circuit court of Cook County. Plaintiff appeals from the adverse judgment, raising three issues for our consideration: (1) whether a venireman insured by the named defendant is qualified to act as a juror; (2) whether the plaintiff was prejudiced by the court's admission of certain evidence and exclusion of other evidence; and (3) whether the verdict was contrary to the manifest weight of the evidence.

We affirm.

The evidence at trial revealed that on February 23, 1966, plaintiff was employed as a journeyman carpenter by W. E. O'Neil & Co., a general contractor engaged by the Allstate Insurance Company to construct Allstate's new home office complex in Northbrook, Illinois, a northern suburb of Chicago. During the course of his work at the Allstate site, Mr. Fandrich sustained severe injuries when he was struck by the 110-foot-long boom and attached jib of a 50-ton truck crane which toppled over. Immediately preceding the incident, the wheeled crane was being operated on a dirt road on the construction site, and was in the process of attempting to traverse a slight incline which was slippery and mushy due to a thawing of the frozen February soil. The crane driver encountered a lack of traction, so he backed the crane up and then proceeded forward. The wheels still slipped and spinned in the soil, so he repeated the process with little success. During the third backing up maneuver, the crane capsized.

Eyewitnesses testified that the boom was at an angle of between 50° and 70° and that an empty bucket used to transport concrete, weighing between 700 and 800 pounds, was suspended from the crane and was swinging back and forth like a pendulum. Testimony was given that there was not a signalman on the ground to direct the crane driver.

Other testimony was elicited by plaintiff that timber mats were not used to improve the crane's traction on the slippery ground. Plaintiff's theory of the case was that the crane's boom elevation combined with the undulating bucket to cause the crane to become topheavy, and that the failure to use timber mats and a signalman constituted negligence and a violation of the Structural Work Act.

Defendant's theory was that the evidence did not show that anyone was negligent or that anyone's negligence had anything to do with the accident. Testimony was given that the crane was being used in its customary manner and in its customary place, and that the angle of the boom was usual, so as to keep the weight of the boom centered over the crane. After plaintiff's witness testified concerning the nonuse of timber mats, defendant's cross-examination established that mats were normally used under a stationary crane to keep it from sinking in a swamp, but not under a moving crane such as was in this case. Neither the foreman nor the crane driver knew why the crane tipped over.

A key issue in the case was whether or not the defendant was in charge of the work being done so as to fall within the purview of the Act. Briefly summarized, the evidence supporting the jury's verdict showed that the contractor, O'Neil, ran the entire job of hiring the workmen, issuing all orders to the tradesmen, and directly supervising the O'Neil employees who were involved in moving the crane. The undisputed testimony of the workmen, including the plaintiff, was that the only persons who ever issued orders concerning the manner and method of performing the work were the O'Neil foremen.

Plaintiff's first contention on appeal pertains to the fact that the jury which returned a verdict for defendant Allstate Insurance Company was composed in part of five jurors who were insured by the defendant at the time of trial. It is alleged that the trial court erred in refusing to excuse the Allstate-insured jurors for cause, that these jurors were unqualified, and that plaintiff was deprived of a fair trial. Although plaintiff has raised the point, we will not consider the merits of the problem because plaintiff failed to properly raise the question in the trial court. Plaintiff's opposition to the Allstate-insured jurors was confined to informal, off-the-record questions to the trial court of whether the court would excuse those jurors for cause. The court replied in the negative. A formal objection or a motion to dismiss a juror for cause was never presented to the trial court.

In *People v. Adams* (1954), 4 Ill.2d 453, 458, the Illinois Supreme Court held that a party with an objection to the competency of a juror "should explicitly make known to the court the nature of his objection, and move the court for the particular relief desired." The in-

formal, off-the-record inquiry in that case was insufficient to preserve the defendant's objection, if any, to the competency of jurors. In the instant case, we hold that the plaintiff's failure to formally object to the veniremen insured by the named defendant insurance company and move for dismissal of the veniremen for cause constituted a waiver of plaintiff's objections, if in fact plaintiff had a bona fide objection to the veniremen.

Plaintiff's next contention on appeal related to the trial court's ruling on two items tendered into evidence; defendant's group exhibit no. 1 and plaintiff's exhibit no. 81. It is argued that the trial court's rulings were prejudicial to the plaintiff's right to a fair trial. Defendant's group exhibit no. 1 is a letter from the general contractor, W.E. O'Neil & Co., to Allstate, soliciting the contract from Allstate. The letter tells how experienced and competent O'Neil is, and lists the important buildings and bridges it has constructed. The only foundation laid for the letter was the testimony of an Allstate employee that the letter was received by Allstate in the regular course of business. Plaintiff objected to the letter's admission into evidence on the grounds of relevancy, but the trial court overruled the objection and admitted the letter into evidence. The defendant contends that the letter was relevant because it showed the care Allstate used in letting the contract, which bears upon the issue of whether there was a wilful violation of the Structural Work Act. Plaintiff argues on appeal that Allstate's method for selecting a general contractor was irrelevant to any of the issues of the case, and particularly irrelevant to the wilful-violation issue, arguing that a contractor's expert status does not exculpate an owner in charge of the work from liability under the Act.

One of the elements to be decided in a Structural Work Act case is whether or not there was a wilful violation of the Act. In *Tenebaum v. City of Chicago* (1973), 11 Ill.App.3d 987, 1000, the court discussed the element of wilfulness and concluded that the "essence of the Structural Work Act is not limited to the concept of knowing or intentional misconduct or even to reckless disregard. Liability is imposed where the existence of dangerous conditions could have been discovered by reasonable care." The question in the instant case, therefore, is whether or not Allstate's care in selecting a contractor may have been probative of Allstate's use of reasonable care in discovering a dangerous condition on the job site.

An owner in charge of the work who hires a contractor he knows to be inexperienced may have to supervise the job site more carefully than an owner who hires an expert in order to exercise reasonable care.

Although Allstate's care in the selection of a contractor is not conclusive of its exercise of reasonable care in discovering dangerous conditions on the job site, or exculpatory under the Act, we feel the letter was properly admitted within the sound discretion of the trial court as being relevant.

■■ Plaintiff's other objections to the admission into evidence of defendant's group exhibit no. 1 were raised in the trial court for the first time in plaintiff's post trial motion. Although plaintiff contends on appeal that the inherent defects of hearsay, improper foundation, self-serving statement, and the mention of Workmen's Compensation insurance were not waived, citing *Johnson v. Jackson* (1963), 43 Ill.App.2d 251, we disagree. In that case, the court held that a general objection is sufficient to preserve unstated grounds of objection which are obvious and incurable. The question in the instant case is whether the unstated grounds of objection were obvious and incurable so as to be preserved for appeal without having been specifically raised in the trial court.

■■ The hearsay objection was not obvious because the letter was not objectionable as hearsay. The letter was not introduced to show the truth of matters contained therein; rather, it was introduced for the sole purpose of showing the information Allstate received from O'Neil as bearing upon Allstate's reasonableness in selecting a contractor. The letter falls outside the hearsay rule. McCormick on Evidence § 249, at 589-90 (2nd ed. 1972).

■■ Inasmuch as the letter was not hearsay, the improper foundation objection was not obvious. Had the letter been offered for the truth of its contents, the business records exception to the hearsay rule contained in Supreme Court Rule 236(a) would have applied and required a proper foundation for the introduction of the letter. However, the letter was not hearsay for the purposes that it was introduced and the business records exception to the hearsay rule is inapplicable under these facts.

■■ The self-serving statement objection was also not obvious. As plaintiff notes, self-serving declarations by a party or on behalf of a party are inadmissible as evidence in favor of the party. (*Werdell v. Turzynski* (1970), 128 Ill.App.2d 139, 150.) The letter from O'Neil to Allstate was not a self-serving statement by Allstate because it was not written by Allstate. As to plaintiff's contention that the letter was written by O'Neil on Allstate's behalf, we note that although the form of the letter may have been specified by Allstate for its administrative purposes, the substance of the letter was solely within O'Neil's control and was not a self-serving statement by Allstate.

■■ Regarding the objection concerning the oblique reference in

the letter to O'Neil's discount on compensation insurance, suffice it to say that the error, if any, was curable but waived by plaintiff. Inasmuch as the abovementioned objections to defendant's group exhibit no. 1 were raised by plaintiff for the first time in his post-trial motion and were not so obvious or incurable so as to be properly preserved for appeal, we need not consider the objections further.

Plaintiff's exhibit 81 was excluded from evidence on the grounds of relevancy. The exhibit is a letter from Allstate to O'Neil requesting that O'Neil hire two students as summer construction workers. The latter was dated May 26, 1966, 3 months and 3 days after the date of the accident. Plaintiff contends that the letter was relevant to the control Allstate had over O'Neil, and was improperly excluded. In *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316, 323-24, the Illinois Supreme Court briefly discussed the rule that evidence of repairs or precautions taken after an accident may be admissible to show control of premises where such control is disputed in a Structural Work Act case. Although the plaintiff in the instant Structural Work Act case did not cite any authorities in support of his argument, we wish to point out that the facts at bar do not involve repairs effected after an accident; rather, they involve a letter written 3 months after the accident involving a matter marginally related to control over the manner of the performance of the work or control of the premises.

■■ The admission of evidence is within the sound discretion of the trial court, whose rulings will not be set aside absent a showing that its discretion was abused to the prejudice of a party. (*Department of Public Works & Buildings v. Dalessio* (1968), 101 Ill.App.2d 187.) In the instant case, the trial court did not abuse its discretion to the prejudice of plaintiff by refusing to admit the letter into evidence, and plaintiff's right to a fair trial was not prejudiced.

Plaintiff's final contention on appeal is that the jury's verdict for defendant on both counts of the complaint was against the manifest weight of the evidence. Regarding the negligence count, plaintiff argues that the evidence showed O'Neil to have been Allstate's agent as a matter of law and fact, thus making Allstate liable in tort under the principle of *respondeat superior*. Regarding the Structural Work Act count, it is argued that the manifest weight of the evidence showed Allstate to have been "in charge" of the work and to have wilfully violated the Act. Allstate's position is that O'Neil was an independent contractor, that Allstate was not in charge of the work, and that there was not a wilful violation of the Act.

■■ We first consider the plaintiff's agency arguments pertinent to the negligence count. The general rules of law to be followed in such

cases were compiled in *Dumas v. Lloyd* (1972), 6 Ill.App.3d 1026, 1029-30, wherein the court wrote:

> "Of primary consideration in the determination of whether a person is acting as an independent contractor or as an agent or employee is the degree and character of control exercised over the work being done. (See *Decatur Railway & Light Co. v. Industrial Board*, 276 Ill. 472, 114 N.E. 915.) When one undertakes to produce a given result without being in any way controlled as to the method used, he is considered an independent contractor and not an employee. (*Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 539, 176 N.E. 751.) But the relationship of principal and agent exists if the principal has the right or the duty to supervise and control, and also the right to terminate the relationship at any time. (*Hulke v. International Manufacturing Co.*, 14 Ill.App.2d 5, 33, 142 N.E.2d 717.) The test is in the right to control and is not dependent upon its exercise. (*Darner v. Colby*, 375 Ill. 558, 561, 31 N.E.2d. 950.) The general rule of liability is that a principal is liable for the negligent acts of his agent, but not for those of an independent contractor. *Hulke v. International Manufacturing Co., supra.*"

Whether a person is an independent contractor or an agent is a question of fact for the jury. *Hulke, supra.*

In this regard, plaintiff's initial argument is that O'Neil was Allstate's agent as a matter of law because the O'Neil-Allstate contract gave Allstate the right to terminate the relationship at any time. Article 21 of the contract provides:

> "The provisions of this Article supersede all of Article 22 of the General Conditions of the Contract except the first sentence.
>
> If the Owner should terminate the Contract under the first sentence of Article 22 of the General Conditions of the Contract *or for any other reason*, it shall reimburse the Contractor for the balance of all payments made by said Contractor under Article 7, plus a proportionate amount of fee. * * *."

The first sentence of article 22 describes Allstate's right to terminate the contract in specific instances providing the architect certifies "that sufficient cause exists to justify such action." The specific instances include bankruptcy, receivership, failure to supply necessary workmen and materials, failure to pay subcontractors, and violation of laws, ordinances, architect's instructions, or contract provisions. Plaintiff's position is that the phrase *for any other reason* means that Allstate had the right to terminate O'Neil's contract for any reason at any time, and that as a matter of law, the retention of this right by Allstate made O'Neil an

agent of Allstate rather than an independent contractor. Defendant's position is that the contract did not grant Allstate the right to terminate O'Neil at any time without cause.

■■■ It is a fundamental rule of construction of contracts that a document msut be considered as a whole and that the intent of its drafters cannot be ascertained from isolated phrases. (*Hammes v. Esposito* (1973), 10 Ill.App.3d 6, 10.) Viewing the O'Neil-Allstate contract as a whole, we are satisfied that it was not the intent of the parties that Allstate should have had an unbridled right to discharge O'Neil without cause. The contract contains express provisions concerning the types of causes deemed to be grounds for termination of the contract. These provisions would be meaningless if plaintiff's interpretation of the isolated phrase *or for any other reason* were given effect. It is clear that the contract gave Allstate the right to terminate O'Neil only upon a proper showing of cause and an architect's certificate that sufficient cause exists, not at any time as is argued. Accordingly, plaintiff's argument must fail. *Tansey v. Robinson* (1960), 24 Ill.App.2d 227, 233-34.

Plaintiff's other agency argument is that the evidence overwhelmingly showed O'Neil to have been Allstate's agent because Allstate actually directed the manner and method in which the work was performed by O'Neil. The pertinent evidence can be categorized as contractual provisions, face-to-face dealings, and written correspondence. The contractual provisions state that Allstate was to pay all costs for the job, to lease the construction equipment used, to approve subcontracts and terms, and to retain title to all work completed and all materials, tools, and supplies. Also, Allstate reserved the right to attend O'Neil's progress meetings, established a trust relationship with O'Neil, and reserved the right to make changes in the contract. The face-to-face conversations deal mainly with the relationships between Allstate's full-time field superintendent, Allstate's home office men, and O'Neil's field manager. The written correspondence consists of letters from Allstate to O'Neil directing O'Neil to do certain things. Each of these categories will be dealt with respectively.

■■ With regard to the contractual provisions wherein Allstate retained control over the expenditures and other matters, plaintiff argues that Allstate deprived O'Neil of its own judgment and discretion as to the method or means by which the work was to be accomplished, citing *Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 85, where the court wrote:

> "The decisions of this court are agreed that an independent contractor is one who renders service in accordance with the will

of the person for whom the work is done only as to the results of the work, and who is free to exercise his own judgment and discretion as to the method or means by which it is accomplished, entirely exclusive of the control and direction of the party for whom the work is done."

Allstate's position is that the contract was awarded to O'Neil on a "cost plus" basis, and Allstate's control over expenditures operated solely to regulate the cost of the project, not to control the manner in which the work was performed by O'Neil. For example, although the crane which fell on plaintiff was leased by Allstate at the time of the injury, the crane was owned and operated by O'Neil and the only purpose for the lease arrangement was to assign a cost to the crane's use so Allstate would know how much to pay O'Neil. The evidence of the contractual provisions was submitted to the jury, and we feel the verdict is supported by this evidence.

The face-to-face dealings between Allstate and O'Neil personnel are cited by plaintiff to show that Allstate retained and exercised actual control over the manner and method in which the work was performed by maintaining a full-time supervisor at the job site and by sending its home office men to inspect the job site. In particular, plaintiff notes that the Allstate field supervisor sent daily reports of job conditions to the home office, attended safety meetings, and made inspections of the work in progress. The home office personnel visited the job site over 60 times prior to the accident, and plaintiff argues that O'Neil's field superintendent admitted that when the Allstate home office engineer "gave him directions either orally or in writing, he would comply." Allstate's position is that its field supervisor's reports were confined to observations on the progress of the work in accordance with the contract, not on how the work was to be done. Furthermore, the Allstate people never gave directions to the O'Neil people on how the work was to be done. Allstate points out that O'Neil's field superintendent alleged to have testified that "he would comply" actually testified that the one specific instance he recalled involving a direction from an Allstate person was when Allstate's engineer asked him to do something, but the O'Neil supervisor said he "reviewed the schedule and decided that we were okay the way we were." Also, the testimony at trial was that the only people who gave directions as to the manner in which the work was to be performed were the O'Neil foremen.

■■ Inspection of work by an owner or his employees or agents does not of itself constitute the level of control over the builder's work necessary to establish an agency relationship with the builder as a matter

of law. (*John Gabel Manufacturing Co. v. Murphy* (1945), 390 Ill. 455, 462.) We feel the jury's verdict has support in the evidence of face-to-face dealings.

The relevant written correspondence between O'Neil and Allstate is cited by plaintiff to show that Allstate gave written directions to O'Neil as to the manner of doing the work. Plaintiff argues that O'Neil was directed as to the manner and method of setting the concrete and removing the forms, the depth of disks in the topsoil, the deployment of O'Neil's work force, the hauling of trees from the job site, and the working hours and schedules. Allstate's position is that these letters were concerned with matters bearing upon the cost of the project, not upon the actual method in which the work was to be completed. Having examined the correspondence mentioned by plaintiff, we note that Allstate's directions were the specification of results, and not directions of the manner in which the work was to be done. The matter was presented to the jury and the jury's verdict is supported by this evidence.

■■ Having examined the evidence noted by plaintiff in support of his argument that O'Neil was Allstate's agent, we find that the evidence at its best created questions of fact, and inasmuch as there is a factual basis for the verdict, it cannot be said that the verdict was contrary to the manifest weight of the evidence.

We now consider plaintiff's argument that the jury's verdict on the Structural Work Act count was contrary to the manifest weight of the evidence. In particular, plaintiff alleges that the manifest weight of the evidence shows that Allstate was an owner in charge of the work who committed a wilful violation of the Act. In support of the "in charge of" allegation, plaintiff cites the evidence discussed above in the agency issues. To support the wilful violation allegation, plaintiff contends the evidence shows that Allstate knew the crane was being used on the job site on muddy ground yet did nothing to insure the safe movement of the crane.

■■ The determination of whether a particular individual or corporation is a person having charge of the work under the Structural Work Act is within the province of the jury. (*Rooney v. Morton Salt Building, Inc.* (1974), 19 Ill.App.3d 962, 964; *Larson v. Commonwealth Edison Co.*, *supra*.) Briefly summarized, the evidence presented to the jury showed that the general contractor, O'Neil, had the sole responsibility for running the job, hiring, issuing orders to workmen, and the operation of the crane. There is some dispute as to whether any Allstate employee ever directed an O'Neil employee in the method for the performance of the work. It is undisputed that Allstate maintained a resident field superintendent at the job site and that Allstate employees frequently visited the job site.

■■ The fact that an owner may have and exercise the right to inspect the progress of work does not necessarily mean the owner is in charge of the work so as to fall within the purview of the Structural Work Act. (*Gannon v. Chicago, M., St. P. & P. Ry. Co.* (1961), 22 Ill.2d 305, 323.) Having considered the evidence presented in this case, the most that can be said for the plaintiff is that whether defendant was in charge of the work was a question of fact for the jury, and there is sufficient evidence to support the jury's determination.

■■ As to the question of whether Allstate wilfully violated the Act or was negligent, we feel there was sufficient evidence to support the jury's verdict.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.