(No. 45680.—

ILER W. VOSS, Appellee, v. KINGDON AND NAVEN, INC., Appellant.

*Opinion filed March 24, 1975.—Rehearing denied May 29, 1975.*

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W.

Allen, Rex K. Linder and Larry T. Frantz, of counsel), for appellant.

Lester Berry Smith, of Peoria (Leonard M. Ring, of Chicago, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

Iler Voss, the plaintiff, brought an action against the engineering firm of Kingdon and Naven, Inc., in the circuit court of Tazewell County, under the Illinois Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*) and the defendant then filed a third-party action against the plaintiff's employer, Iber & Sons, claiming a right to indemnity. A jury trial was held, and at the close of all the evidence the trial court granted the defendant's motion for a directed verdict and dismissed the defendant's third-party action. The appellate court reversed and remanded for a new trial (9 Ill. App. 3d 30), and we granted the defendant's petition for leave to appeal.

The plaintiff was hired by Iber & Sons, a contractor, as a steel worker in the construction of an extension to the city of Pekin's sewage and disposal plant. The plaintiff was working on the top of a wall on the afternoon of April 9, 1970, when his foreman notified him it was quitting time. As the plaintiff stepped from the wall onto a scaffold, the scaffold collapsed causing him to fall to the concrete footing eight feet below. It is undisputed that the scaffold collapsed because a vertical support, which had been used to anchor the scaffold, had been removed earlier in the day. There is no question as to the nature and extent of the plaintiff's injuries.

The single issue presented on this appeal is whether the trial court was correct in deciding that all of the evidence, viewed in the aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict based on that evidence could ever stand.

See *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494.

Kingdon and Naven, Inc., the defendant engineering firm, entered into a contract with the city of Pekin (hereafter, the City) to provide preliminary and construction engineering services in the construction of an extension to the City's sewage and disposal plant. The contract provided, *inter alia,* that the defendant would make detailed plans, special proposals and estimates of cost for the project; provide continuous inspection of the work for compliance with plans and specifications as the construction proceeded; consult on the interpretation of plans and specifications and any changes under consideration as construction advanced; safeguard the City against defects and deficiencies on the part of the contractor but not guarantee the performance of the contract by the contractor; and conduct a final inspection of construction.

The contract between the contractor, Iber & Sons, and the City also referred in part to the authority of the defendant (the engineer). It provided:

> "8–7 CHARACTER OF WORKMEN AND EQUIPMENT.
>
> The Contractor shall employ only competent and efficient laborers, mechanics, or artisans, and whenever, in the opinion of the Engineer, any employee is careless, incompetent, obstructs the progress of the work, acts contrary to instructions, or conducts himself improperly, the Contractor shall, upon request of the Engineer, discharge or otherwise remove him from the work and shall not employ him again, except with the written consent of the Engineer.
>
> 8–8 SUSPENSION OF WORK.
>
> The Engineer shall have authority to suspend the work wholly or in part, for such period of time as he may deem necessary, due to conditions unfavorable for the satisfactory prosecution of the work, or to conditions which in his opinion warrant such action; or for such time as is necessary by reason of failure on the part of the Contractor to carry out orders given, or to perform any or all provisions of the contract."

The contract between the contractor and the City, giving the engineer (the defendant) this extremely broad authority over the work, was drawn for the contractor and the City by the defendant.

Leon Kingdon, the president of Kingdon & Naven, Inc., when called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 60), testified that in 1967 his firm contracted with the City to do preliminary and construction engineering for an extension to the Pekin plant. As the construction engineer his firm was obliged to make continuing inspections of all construction to insure that Iber's work complied with the contract's plans and specifications. He stated that, in his view, Kingdon and Naven's duty under the contract, to see to it that Iber's work met the contract's specifications, did not give it any control over how the contractor constructed the extension. He said that Kingdon and Naven had no responsibility to enforce safety regulations and testified that his firm could suspend work only if the construction on the extension was not performed in a workmanlike manner. However, on cross-examination he admitted that the contract stated that Kingdon and Naven could suspend the construction work if the contractor did not follow its special provisions, proposals and estimates of cost for orders and he acknowledged that the contract said nothing about suspending the work only if it was not being performed in a workmanlike manner. He also said that he had told the contractor to step up or to expedite the progress of the work on a number of occasions.

James Thompson, who was employed by the defendant as a resident engineer, was also called by the plaintiff as an adverse witness under section 60. He testified that he had been assigned to the sewage extension project three months prior to the plaintiff's injury. During that period he spent approximately 20 hours per week on the construction site inspecting materials the contractor used

and insuring that the work was performed in a workman-like manner. If he found a defect or deficiency in materials he would report it to his superiors and after conferring with them would then report it to the contractor's project engineer. He said on a number of occasions he was ordered by his superior to instruct the contractor to expedite work on the project. He testified that at about 4 p.m. on April 9, 1970, he saw the scaffold collapse at the project site. It collapsed, he said, because a vertical support which had anchored the scaffold had been removed that morning to permit workmen to work without obstruction underneath the scaffold. He said that although he knew the purpose of the vertical support was to prevent the scaffold from cracking in the center and collapsing, and was aware of its removal, he did not speak to anyone of the danger created.

The defendant contends that the directed verdict was proper because it was not "in charge of the work," which is required for one to be liable under the Structural Work Act.

Section 9 of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 69) provides in part:

> "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof.
>
> \* \* \*
>
> For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained."

It cannot be said that, using the standard laid down by this court in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill.2d 494, all of the evidence here, reviewed in the aspect most favorable to the plaintiff, so overwhelmingly favored the defendant that no contrary verdict based on that evidence could ever stand.

Whether a defendant in an action is to be considered as "having charge of" the work under the Structural Work Act is a question of fact for the jury's determination. *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.*, 22 Ill.2d 305; *Kobus v. Formfit Co.*, 35 Ill.2d 533.

This court in *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, reversed a decision of the appellate court which had affirmed a directed verdict for the defendant engineering firm in an action brought under the Structural Work Act. At trial it had been shown that the defendant engineering firm did not have personnel assigned to the construction site, though periodic visits were made by its chief engineer. The trial court held the defendant engineering firm could be liable under the statute only if it was "actively engaged in supervisory work" or if it "had something to do with the supervision and management of the job." On that basis it quashed a subpoena which the plaintiff had served on the defendant because the court concluded that the records sought could not show such active supervision and control. In reversing the appellate court's affirmance of the trial court's action this court addressed itself to what is meant by "having charge of" under the Structural Work Act. It was said:

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould*, 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate

factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficient purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure.

\* \* \*

The term 'having charge of' is one of common usage and understanding, and it is our opinion that further attempt at definition can only lead to confusion and error." *Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 321-323.

In *Miller v. DeWitt,* 37 Ill.2d 273, supervising architects, who, as here, had the responsibility of design as well as supervision, were held to have been in charge of work within the meaning of the Act, because they had the right to stop the work if it were being performed in a dangerous manner. In *Miller* the architect's contention was that since they had neither the right nor the duty to control the methods used by the contractor but had only the duty to see that the construction when completed met the plans and specifications, they were not in charge of the work within the meaning of the Act. They noted that the contract between the owner and the contractor stated that the contractor was to be responsible for the safety of the employees, while the defendant architects' contract with the owner gave them only the right to "stop work whenever such stoppage may be necessary to insure proper execution of the contract." This court considered the

contract gave the architects the authority to stop work if it was being done in an unsafe or hazardous manner and in the light of that judged that a jury question as to whether the defendant architects were "in charge of" the work had been presented on the facts of the case. It was said: "We *** believe that *** the architects' right to stop the work if it were being done in a dangerous manner makes them persons 'having charge' within the meaning of the act." (*Miller v. DeWitt*, 37 Ill.2d 273, 286.) The judgment for the plaintiffs was affirmed.

The authority given the defendant here was broad and sweeping. It was to conduct a continuing inspection of the contractor's work to insure that it complied with the defendant's plans and specifications. Under the contract Iber & Sons and the City entered into, which contract had been drawn by the defendant, the contractor would be obliged at the defendant's request to discharge or remove workmen whose work the defendant considered to be improper. Too, the defendant was given the authority to suspend work wholly or in part for such time as it might consider necessary because of "conditions unfavorable for the satisfactory prosecution of the work," or "due to conditions which in his opinion" warranted such suspension of work. And the defendant was given authority to suspend the work if there was any failure of the contractor to carry out orders given or to perform any provision of the contract.

Considering that directed verdicts are proper only when the standard announced in *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494 is met, and considering this court's holdings in *Larson* and *Miller* and looking at the authority over the work given the defendant here, it is clear that the trial court erred in directing a verdict that the defendant was not in charge of the work.

For the reasons given, the judgment of the appellate court reversing the circuit court and ordering a new trial is affirmed.

*Judgment affirmed.*