WILEY EMBERTON, Plaintiff-Appellee, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.*, Defendants-Appellants.— (UTLEY-JAMES CORPORATION, Intervenor-Appellant.)

Third District   No. 76-19

Opinion filed December 29, 1976.—Rehearing denied February 2, 1977.

BARRY, J., dissenting.

Costigan, Wollrab, Fraker, Wochner & Neirynck, of Bloomington (William J. Costigan, of counsel), for appellants.

James Walker, of Bloomington, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Wiley Emberton suffered a back injury while moving a portable scaffolding during the construction of a corporate headquarters building for defendant State Farm Mutual Automobile Insurance Company. Plaintiff brought a personal injury action against State Farm, owner of the premises, and against Ellerbe Associates, Inc., architects for the project, alleging that defendants' violation of the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*) was the cause of his injury. State Farm and Ellerbe filed third-party complaints against the general contractor, Utley-James Corporation. Before trial Utley-James assumed the defense for State Farm and Ellerbe, and defendants dismissed their third-party complaints. At the conclusion of the trial, the jury returned a verdict for $36,500 in favor of plaintiff. Defendants appeal from the judgment and from the denial of their post-trial motions.

Joining in this appeal is Utley-James Corporation which was denied

leave to intervene to protect its right of subrogation under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(b)).

The principal issue for review is whether, under the Structural Work Act, the owner and the architect of the State Farm building project had charge of the construction operation in which plaintiff was engaged at the time of his injury. Under section 9 of the Act, any "owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, * * *" is liable for injuries occasioned by wilful violations of the Act. Ill. Rev. Stat. 1975, ch. 48, par. 69.

■■ The Illinois Supreme Court has stated that whether a defendant is a person having charge of work within the meaning of the Act is primarily a factual question and must rest upon an assessment of the totality of the circumstances. Before a defendant may be found to be in charge of the work, plaintiff must show that defendant had some direct connection with construction operations, and that he was in charge of the particular operations which resulted in the alleged injury. *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134.

Prior to the *McGovern* decision, courts often gave primary consideration to whether the owner or architect had a right to stop the work if it did not comply with the plans and specifications from which could be inferred the right to stop work if it was being done in a dangerous manner. (*Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 328 N.E.2d 297; *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) We believe the *McGovern* decision retreats from such a broad interpretation of the statute.

■■■ In *McGovern* the plaintiff, who was injured in a fall from a scaffold during construction of a hospital addition, filed suit against the architect employed to design the addition and to supervise the work to see that it was in compliance with the construction contract. The supreme court affirmed the appellate court's reversal of the judgment for plaintiff, and held that the defendant architect was not a person having charge of the work under the Act. After examining the provisions of the construction contract, the court concluded that defendant did not have a right to stop work if it were being done in a dangerous manner where dangerous methods did not affect the quality of construction. Unlike *Voss*, the defendant in *McGovern* had no broad authority to discharge workmen or suspend work, and, furthermore, defendant had never attempted to exercise control over the work by issuing orders to the builders. After concluding from the evidence that defendant's function was limited to overseeing the work generally so as to ensure conformity with the contract, the court stated:

"It is true that the contract between [the hospital and the general contractor] recognized in the defendant a right to supervise the work. But, as a general rule, even the 'duty to "supervise the work" merely creates a duty to see that the building when constructed meets the plans and specifications contracted for.' [Citation.] The right to inspect the work, also given the defendant, is but ancillary to the defendant's right to supervise. These rights, as afforded the defendant in this case, cannot alone form a basis for a finding of coverage under the Act.

We realize that the Act has traditionally been given a liberal construction in order to effectuate the legislative purpose of protecting the construction worker. [Citations.] Yet we have also held that the Act was not intended 'to cover any and all construction activities whatsoever' [citation], nor was it intended to predicate a duty, and thus a corresponding liability for its violation, upon mere ownership of the premises upon which construction is undertaken [citation]. Were the defendant to be held in charge of the work on these facts, he would in essence be subjected to liability as a result of his status as a supervising architect alone. In our view, the imposition of such an onerous burden is neither in keeping with, nor required by, the salutary purpose underlying the Act." 65 Ill. 2d 54, 69, 357 N.E.2d 1134, 1142.

Turning to the case at bar, we have examined the record closely and find that the only contractual document in evidence was Plaintiff's Exhibit 12 which was part of an agreement between the owner and architect requiring Ellerbe to perform the duties set out in "AIA Document A201." (That document was not placed in evidence.) The agreement also required Ellerbe to make periodic visits to the site to observe whether the work met the specifications of the contract, and authorized him to prepare "Change Orders" and to issue the owners' instructions to the contractor. The only provision relating to the right to stop work was as follows:

"The Architect shall have authority to reject Work which does not conform to the Contract Documents. The Architect shall also have authority to require the Contractor to stop the Work whenever in his reasonable opinion it may be necessary for the proper performance of the Contract." Plaintiff's Exhibit 12.

There was a further provision for a fulltime Project Representative to the employed by Ellerbe, but his duties, responsibilities, and limitations of authority were apparently set out in a separate document which was not introduced into evidence. According to the testimony of Joseph Ostrander, the architect's project representative, he was authorized to

reject work that did not conform with the contract, but he could not issue directions as to means, methods, or sequences of construction or "procedures for safety prevention."

■■ On the basis of the limited evidence relating to contractual rights and duties contained in the record, plaintiff clearly did not establish defendants' right to stop the work if it was being performed in a dangerous manner.

Much testimony was received involving numerous "change orders" which were issued by Ellerbe in the course of construction. These changes involved such matters as enlargement of the area planned for the data processing department and expansion of the parking lot. These were additions to the original contract at a considerable increase in cost. Plaintiff argues that these change orders in effect stopped work on numerous occasions and thus demonstrate that defendants were in charge of the work.

■■ Plaintiff also refers to Ostrander's attendance at weekly coordination meetings between the prime contractor and the various subcontractors, but the minutes of those meetings were excluded when offered in evidence. Plaintiff further relies upon the detailed inspections of the project conducted by defendants before State Farm accepted the building as completed. However, an owner or architect's right to inspect the progress of the work does not necessarily mean that he is in charge of the work under the Structual Work Act. (*Fandrich v. Allstate Insurance Co.* (1st Dist. 1974), 25 Ill. App. 3d 301, 322 N.E.2d 843.) We believe none of the evidence relied upon by plaintiff, indicates anything more than performance of the supervisory functions of an architect who is responsible for seeing that the finished building conforms to the plans and specifications of the contract. Although, while construction was in progress, changes in the plans were made to satisfy the needs of the owner, these changes did not alter the division of responsibilities between the owner, the architect, and the general contractor.

■■ There was also testimony that Ostrander, the architect's project representative, would not allow "placement of granular material * * * until the freeze was out of the ground," that he approved a method of solving the problem of steel floor girders which were three-eighths of an inch shorter than specified, that several times he gave instructions relating to testing procedures, and that he gave or withheld approval of the sequence of work on other occasions. In each case, Ostrander explained that his orders and instructions were related solely to ensuring compliance with contractual specifications. The contract apparently specified certain construction sequences and required testing of concrete and of steel girders after these items were in place. None of this evidence established that Ostrander, as Ellerbe's representative, had charge of the construction

work, but instead indicated that the architect performed his contractual duty "to guard the Owner against defects and deficiencies in the Work of the Contractor." (Plaintiff's Exhibit 12.) Furthermore, the record contains no mention of any change orders relating to methods of construction.

■■ In summary, plaintiff contends that the contractual provisions concerning the right to stop work, the change orders issued to alter the construction plans by adding substantial items to the original contract, the inspections, and the oral instructions issued to carry out the specifications of the contract, taken together, support a finding that defendants had charge of the work in which plaintiff was engaged at the time he was injured. However, all of these rights were ancillary to State Farm's right to change its plans and to Ellerbe's right to supervise the work to ensure compliance with the contract. To uphold a finding that State Farm had charge of the work would subject it to liability on the basis of ownership alone. Similarly, to hold Ellerbe in charge of the work would in essence impose liability solely as a result of its status as supervising architect. As was said in *McGovern*, the Structural Work Act does not require the imposition of such onerous burdens.

Accordingly, we conclude that all of the evidence, viewed in the aspect most favorable to plaintiff, so overwhelmingly favored defendants that it was error for the trial court to deny the defendants' post-trial motion for judgment notwithstanding the verdict. The judgment of the circuit court is therefore reversed.

Defendants also contend that certain evidence was improperly received by the trial court, and Utley-James argues that it should have been permitted to intervene so as to protect its subrogation rights. However, in view of our reversal of the judgment on other grounds, these contentions need not be considered.

Reversed.

SCOTT, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I dissent. I agree with the reasoning of Justices Carter and Goldenhersh in *McGovern v. Standish*, 33 Ill. App. 3d 717, 341 N.E.2d 739, and *McGovern v. Standish*, 65 Ill. 2d 54, 1134 N.E.2d 357, respectively.

Further and specifically, *McGovern*, so heavily relied upon by the majority, does not involve an *owner* as defendant, in addition to an architect defendant. Justice Crebs' majority opinion for the Supreme Court while reciting that an architect should not be required to comply with the onerous burdens of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 40, par. 60 *et seq.*), did not, in my judgment, even infer that the same

result should obtain with *owners* so totally in charge of change, as State Farm in the instant case.

Here State Farm reserved the right to make change orders and initiated some 127 such orders involving substantial redesign and resulting in a 37% increase in the cost of the structure and the expenditure of millions of additional dollars. Given the purpose of the Structural Work Act to provide for the protection and safety of persons in and about construction sites, I deem it inconceivable to assume this owner defendant was not in charge of safety. I believe the owner is statutorily obligated to be interested in safety and that the owner by change orders actually participated, which participation inheritently involved safety.

In my view that obligation can be carried out by an architect agent of the owner, and the architect not be liable, as in *McGovern*, but with the owner still remaining liable. The owner should not escape liability for failure to provide safe scaffolding by entrusting that duty to another.

As unquestionably more than one party can be in charge of the work, I see no inconsistency with *McGovern* in approving the action of the trial court in its allowing the plaintiff's motion to strike the petition of plaintiff's employer to intervene. I would affirm the judgment for the plaintiff rendered upon the verdict returned by the jury involving a question of fact.