IRENE GRUSZECZKI, Indiv. and as Ex'r of the Estate of FRANK C. GRUSZECZKI, Deceased, Plaintiffs-Appellants, v. ACME-CLEVELAND CORPORATION et al., Defendants-Appellees.

Third District    No. 78-219

Opinion filed April 12, 1979.—Rehearing denied May 9, 1979.

James D. Mowen and John V. Patton, both of Bozeman, Neighbour, Patton and Noe, of Moline, and Campbell Andrews, of Andrews and Andrews, of Kewanee, for appellants.

Ralph D. Sauer, of Betty, Neuman, McMahon, Hellstrom and Bittner, of Davenport, Iowa, for appellee Acme-Cleveland Corporation.

Stuart Lefstein, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee Del Construction Company.

Burrel Barash, of Barash & Stoerzbach, of Galesburg, for appellee Thomas Plumbing and Heating Company.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Irene Gruszeczki brought suit in the Circuit Court of Henry County to recover damages for the death of her husband, Frank Gruszeczki, allegedly as a result of violations of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*). Named as defendants were Acme-Cleveland Corporation, owner of the building under construction; Del Construction Company, general contractor; and Thomas Plumbing and Heating Company, plumbing subcontractor. The trial court granted defendants' motions for summary judgment, and plaintiff appeals.

In August of 1974 construction of a new factory and office building for Shalco System Division of Acme-Cleveland Corporation was begun in Kewanee, Illinois. The owner, Acme-Cleveland, engaged an architect to prepare building plans and specifications. The general contract, which was awarded to Del Construction Company, provided that the architect was to be the owner's representative during the construction project, and that the architect's services would include issuing certificates for payment, checking progress and quality of the work for compliance with the contract, and exercising the right to condemn work which fails to conform to the contract. A provision in the contract stated explicitly that the architect would "not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs." In another provision, the general contractor was given the responsibility for supervising all subcontractors and coordinating their

work, for securing compliance with all applicable laws, ordinances, rules and regulations, and for initiating, maintaining, and supervising all safety precautions and programs in connection with the work.

A separate subcontract governed the plumbing work. Included within the scope of the work was an item as follows:

"A complete system of water service exterior to building with connections to city mains at road, or edge of property, service line through property to building, fire hydrants, connection to water meter, including excavating and backfill."

The initial phase of the project included the installation of exterior water service and two fire hydrants. When Thomas Plumbing employees were ready to install the first fire hydrant and its connecting service pipe, Del's project foreman, Oswald Schlack, together with Gordon Mullooly, foreman for Thomas Plumbing, determined the correct location of the hydrant in relation to the building. The hydrant was then placed in position, a trench was dug, and the service pipe was installed from the hydrant north towards Page Street. Since the city water main was located on the far side of Page Street, Thomas Plumbing placed its service pipe under the street to a point four or five feet from the water main.

An ordinance of the City of Kewanee provided as follows:

"9—5—3: PUTTING IN SERVICE: In all cases the tapping of the main and putting in of the service pipes * * * between the main and the meter shall be done by the City, at the expense of the applicant or owner of the premises. * * * In installing a water service, the Superintendent or person authorized by him will tap the main, inserting a stop cock, which shall be known as the corporation cock, and shall lay the service pipe from the main to the meter, which shall, if possible, be placed in the cellar."

In compliance with this ordinance, Mullooly contacted the Kewanee Water Department to arrange for the connection to the city main and was informed that the city's equipment for digging trenches would be in use elsewhere so Thomas Plumbing would have to make the excavation. On the morning of September 9, 1974, at the direction of water department employee Frank Gruszeczki, a trench 10 feet long, eight feet wide and six feet deep was dug around the main by an employee of Thomas Plumbing using a backhoe.

After the trench was dug, Gruszeczki and another city employee went into the trench and cut into the side of the main to make the tap. Although the water supply to this segment of the main had been shut off at valves located a block or two on either side of the work site, the water remaining in the large pipe came out through the hole. The city workers hooked up a pump to carry off the water, but the pump failed to work. While the men waited for a second pump to arrive, the trench filled with

water and remained filled for about one-half hour. After the second pump had pumped out most, but not all, of the water and mud, the two city workers went back into the trench to complete the connection. The backhoe operator, a Thomas Plumbing employee, warned Gruszeczki not to go back into the trench until the bottom was drained and checked, but Gruszeczki said he could work in the water. A few minutes later a chunk of one wall of the trench fell into the trench, knocking Gruszeczki against the water main and partially burying him in dirt. Gruszeczki was hospitalized with a broken pelvis and died four days later of a blood clot.

Decedent's widow, individually and as executor, filed this cause, charging defendants with alleged violations of the Structural Work Act and seeking $155,000 damages.

Motions for summary judgment were filed by all three defendants, supported by affidavits and depositions. The trial court allowed the motions and entered summary judgment. In a written opinion, the court found that the work involved here was the city's responsibility and was in fact being performed by the city, through its employees, as required by ordinance. Plaintiff appeals, contending that summary judgment was erroneously entered because genuine issues of material facts exist as to whether each defendant had "charge of" the work within the meaning of the Structural Work Act.

The pertinent provision of the Act is found at section 9 (Ill. Rev. Stat. 1977, ch. 48, par. 69), as follows:

> "§9. Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof * * *.
>
> * * *
>
> For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby * * *."

Plaintiff's arguments can be briefly summarized. First, she asserts that the determination of who is in charge of the work is a question of fact. (*E.g., Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 328 N.E.2d 297; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) Plaintiff then contends that Thomas Plumbing was in charge of the work because connection of the new water system with city water mains was expressly within the scope of the plumbing subcontract; that Acme-Cleveland was in charge of the work because under the general contract the owner had the right to stop work and to make changes; and that Del was in charge of the work because the general

contract gave Del direct supervisory authority over the entire project plus responsibility for safety.

There are, of course, numerous cases where the pleadings or the evidence disclosed no facts which would support a finding that a defendant had charge of the work, and in such cases summary judgment or a directed verdict was held to be proper. (*E.g., McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134; *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54; *Kiszkan v. Texas Co.* (1961), 22 Ill. 2d 326, 175 N.E.2d 401.) Particularly instructive is *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457, where plaintiff, a construction company employee, was injured when he fell from the top of a grain bin while performing some repair work on the bin. Plaintiff sued the grain elevator company which was in possession of the bin as lessee. The supreme court affirmed the summary judgment entered in favor of defendant stating the applicable rules, as follows:

> "Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. [Citation.] If the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact." 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459.

Here plaintiff has asserted in her pleadings that each defendant had charge of the work within the meaning of the Act, but the evidentiary facts submitted to the court in support of the motion for summary judgment establish that, under the municipal ordinance, the exclusive right to perform and control the water main tap rested with the city, notwithstanding any provisions of private contracts to the contrary. In other words, any attempt by Thomas Plumbing to make the connection or any effort by Del to direct the decedent's method of operation would have been futile under the terms of the ordinance. Furthermore, the discovery depositions show that decedent did in fact exercise full control over the work that day.

The phrase "having charge of" has not been specifically defined by the courts, but has been said to be a term of common usage and understanding. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) In particular cases, the question of liability under the Act has turned upon whether the defendant had a right to stop the work if it was being performed in a dangerous manner (*Miller v. DeWitt-Amdal & Associates* (1967), 37 Ill. 2d 273, 226 N.E.2d 630) or whether he had a right to supervise and control the work (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348). In *Warren*

*v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54, the court affirmed the dismissal of the complaint as to the defendant owner, observing that he did not have the right to select the party to perform the operation or the right to make suggestions concerning the methods to be used. Similarly in the case at bar, none of the defendants had authority to select the party to perform the tapping operation, or to supervise, or to suggest the method of accomplishing the task, or to stop the work if it was unsafe. On the basis of the facts before us, we conclude that neither the owner, nor the general contractor, nor the plumbing subcontractor was sufficiently involved in the work of tapping the city water main to create a question of fact as to who had charge of that work.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

ALLOY and SCOTT, JJ., concur.