(No. 44498.—<span style="background:black"></span>)

EDITH BUEHLER, Appellee, v. TOYNAN CONSTRUC-
TION COMPANY *et al.*—(Toynan Construction Co. *et
al.*, Appellees, v. Roeth & Cutler, Inc., Appellant.)

*Opinion filed September 20, 1972.*

WILLIAM P. NOLAN and PRETZEL, STOUFFER,
NOLAN & ROONEY, of Chicago (JOSEPH B. LEDER-
LEITNER, of counsel), for appellant.

LEONARD M. RING, of Chicago, for appellee Edith
Buehler.

WILLIAM H. SYMMES and JOHN M. O'CONNOR,
JR., of KIRKLAND, ELLIS, HODSON, CHAFFETZ &
MASTERS, for appellee Toynan Construction Co.

MR. JUSTICE SCHAEFER delivered the opinion of
the court:

This is an action brought under the Structural Work
Act (Ill.Rev.Stat. 1961, ch. 48, par. 60 *et seq.*) by the
widow of Carl Buehler to recover damages for his death.
The defendants are Toynan Construction Company (To-

ynan), the general contractor for the construction of a building at Northern Illinois University, Roeth & Cutler, Inc. (Roeth), a subcontractor, and Samuelson and Sandquist (Samuelson), the architects who prepared the plans and specifications.

Toynan and Samuelson filed counterclaims against Roeth. The circuit court of Cook County entered summary judgments in favor of Roeth and against the plaintiff and the counter-plaintiffs, Toynan and Samuelson. Upon appeal these judgments were reversed (133 Ill.App.2d 106, 272 N.E.2d 861), and we granted leave to appeal.

In the affidavit in support of its motion for summary judgment, Albert Cutler, a vice-president of Roeth, stated that Roeth is a manufacturer's representative handling products, among others, of the Kalwall Corporation; that on July 6, 1962, Roeth entered into an agreement with Toynan by which it agreed to furnish and install Kalwall skylights in the building; that pursuant to the agreement Roeth issued purchase orders to Kalwall Corporation and others for all of the needed materials and labor; that among these purchase orders was one issued to Hamilton Glass Company for all the labor for setting the Kalwall panels in the skylight, with all caulking and glazing on the interior and exterior sides of the skylight; that after the materials arrived at the building site Cutler and Carl Buehler, the superintendent for the Hamilton Glass Company, met there and examined the materials; that "We discussed the manner in which the caulking would be used to furnish a watertight seal for the panels, but there was no discussion with him as to the manner in which Hamilton Glass Company, and its employed labor, including Buehler, would accomplish any of this work. We did not discuss what equipment he would use nor what tools he would use. At no time on said visit of July 19, 1963, did I discuss, nor did I undertake on behalf of Roeth & Cutler, Inc., to provide any assistance, direction or superintendence of the work of installing the said panels, nor was

there any undertaking by me that time, or on any other occasion, to supply any equipment, tools, scaffolds, staging, or any other equipment, tools or contrivances that Hamilton Glass would use in the installing of the panels. On that same day I purchased some bolts and nuts which would be needed to bolt portions of the skylight together, as it would be installed by Hamilton Glass Company, and left these at the building site." Cutler's affidavit also stated that no representative of his firm again visited the construction site until after hearing of Buehler's death, sustained in falling from the roof, on August 1, 1963.

No counteraffidavits were filed, and Roeth contends that Cutler's affidavit establishes it was not at any time engaged in the work of installing the skylights and so cannot be considered to have had "charge of" the construction at the building site. Therefore, it argues, it is immune from liability for the death of Carl Buehler under section 9 of the Structural Work Act (Ill.Rev.Stat. 1961, ch. 48, par. 69), either directly or by way of indemnity.

The appellate court relied upon *Larson v. Commonwealth Edison Co. (1965), 33 Ill.2d 316, 321-22,* for its conclusion that "[w]hile it has been held that an owner may effectively insulate himself from liability under the statute by employing an independent contractor to assume all responsibility for the work, a subcontractor obligated by contract to complete a specific phase of the work cannot escape liability merely by selecting others to discharge this obligation and then plead as a defense his failure to exercise any control over the construction involved."

Roeth argues that the distinction thus drawn between owners and subcontractors is unjustified, saying: "The Structural Work Act creates no artificial distinctions as to the classes of persons who are 'in charge of' the work. In the statutory terms the 'owner' is in no greater position or status than a 'subcontractor.' If (according to *Larson*) an

owner 'is not in charge of' or is not liable by reason of a contract to an independent contractor, a subcontractor is not liable under the statute by reason of a sub-subcontract. Where the statute creates no artificial distinction, the courts should not create any either. In fact, it is hoped that the era of legal fiction is over."

This argument, however, fails to recognize important factual differences which ordinarily exist between an owner and a subcontractor. In a vast majority of instances, the owner lacks the knowledge and skill that is essential to construction operations, and for that reason must use an independent contractor. Similar considerations do not exist in the case of a subcontractor who has by his contract voluntarily agreed to do the work in question. A distinction which recognizes these facts is not an artificial one, nor does it involve a legal fiction.

Here Roeth contracted with Toynan to "furnish and install" the skylights, and thus assumed the right to control the work. As we held in *Larson,* "*** such right, exercised or not, is sufficient to establish duty under the act." (33 Ill.2d at 325.) And as the appellate court stated, "The Act is applicable to those persons 'having charge of' the work; that is, not only those who exercise direct supervisory control, but also those who under the circumstances of the particular case have assumed responsibility therefor." (272 N.E.2d at 864.) The facts stated in the affidavit submitted by Roeth were not sufficient to entitle it to judgment against either the plaintiff or the other defendants.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*