JOHN WESTERFIELD *et al.*, Plaintiffs-Appellees, *v.* ARJACK COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant.—(CHICAGO HOUSING AUTHORITY *et al.*, Defendants; CHICAGO HOUSING AUTHORITY, Third-Party Plaintiff; PRESBITERO AND SONS, INC., Third-Party Defendant-Appellee.)

First District (3rd Division)    No. 77-619

Opinion filed October 24, 1979.

William D. Maddux, Ltd., of Chicago (Raymond R. Cusack, of counsel), for appellant.

Robert Q. Hoyt, Ltd., of Chicago (William J. Harte, Ltd., of counsel), for appellees.

Richard L. Berdelle, of Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner and Robert Marc Chemers, of counsel), for appellee Presbitero and Sons, Inc.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs John Westerfield, Sammie Lee Whisenton and Phillip Winters brought this action under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60-69) against defendant Arjack Company, Inc., for injuries sustained when the platform of a material hoist on which they were riding fell to the ground. Arjack was the general contractor of the construction project. It brought a third-party action for indemnity against the plaintiffs' employer, Presbitero & Sons. The jury returned a general verdict totalling $90,000 in favor of the plaintiffs and against Arjack. In the third-party action, the jury returned a general verdict in favor of Arjack. Two special interrogatories were answered by the jury as follows:

> 1. Do you find that Arjack violated the Structural Work Act by allowing plaintiffs to ride the hoist in question and that that violation was a proximate cause of this occurrence and plaintiffs' injuries?

YES

If yes, do you find that that violation of the Structural Work Act was an active violation?

YES

2. Do you find that Arjack violated the Structural Work Act by failing to provide plaintiffs with a ladder and that that violation was a proximate cause of this occurrence and plaintiffs' injuries?

NO

The court entered judgment on the general verdict in favor of plaintiffs. In the third-party action, the court entered judgment in favor of Presbitero based on the jury's answer to special interrogatory No. 1.

Arjack contends that: (1) it was not in charge of the work within the meaning of the Act; (2) it did not wilfully violate the Structural Work Act; and (3) any violation of the Structural Work Act by Arjack was passive, and there was no evidence to support the jury's answer to special interrogatory No. 1 finding that the violation was active. We affirm.

The accident occurred at the Chicago Housing Authority project at 1309 South Independence Boulevard. The C.H.A. had employed Arjack as the general contractor for the project which consisted of 18 buildings. The C.H.A.-Arjack contract provided that Arjack was to have a competent superintendent satisfactory to the C.H.A. on the jobsite at all times. Except as otherwise specifically stated in the contract, Arjack was to pay for and provide, among other items, all materials, labor, tools and equipment. Arjack could subcontract the work with the written approval of the C.H.A., but it was responsible for the work of the subcontractors. Under the contract, the C.H.A. could issue a written stop order if Arjack did not provide enough men or equipment or did not perform the work in accordance with the contract. Another provision of the contract required Arjack to "exercise proper precaution" at all times for the protection of persons and property and to observe the safety provisions of applicable laws and construction codes.

Arjack appointed Arthur Conboy as construction superintendent and James Mayberry as assistant superintendent of the project. No other Arjack employees worked at the jobsites. Mayberry testified that he checked on the subcontractors to see that the work was being done properly, but he had nothing to do with the individual employees of the subcontractors. It was also his duty to insure that the guard railings were installed and ladders were present on the site.

Arjack subcontracted with Presbitero to do some of the masonry work on the project. The subcontract incorporated the contract between Arjack and the C.H.A.

In January 1978, Presbitero leased a hoist from Arrow Contractors. The hoist, bearing a sign which read "No Riders," was used on the

construction site. Despite the sign and safety code provisions which forbade persons to ride material hoists, various workers on the jobsite rode it. The three plaintiffs testified that they rode the hoist on many occasions. According to their testimony, they had to ride the hoist if there were no ladders at a given site. Some Presbitero employees testified that they rode the hoist in the presence of the Presbitero bosses. Milton Dennis, the Presbitero foreman, was aware that bricklayers were riding the hoist. There was also testimony that two of Presbitero's supervisory personnel rode the hoist.

There is a dispute as to whether Arjack employees rode the hoist. Dennis testified that Mayberry, Arjack's assistant superintendent, rode the hoist if there was no ladder available. Mayberry denies he ever rode the hoist, and both Arjack superintendents testified that they never saw the hoist being used for any purpose other than to carry materials.

There is also conflicting evidence as to whether there were any ladders present at the site of the accident. The superintendent of the company which supplied the ladders testified that his company built ladders at the 18 sites involved in the project. To his knowledge, ladders were available at each jobsite. Conboy, Arjack's superintendent, testified that ladders were normally fastened to the building. Although he had no knowledge regarding the presence of ladders on the day in question, Conboy stated that he saw ladders on the jobsites every time he visited them during the 1½-year period that the project was under construction. Mayberry, Arjack's assistant superintendent, testified he had observed ladders on all sites under construction. He had seen a ladder at the site of the accident both the day before and on the day of the accident. On the other hand, Presbitero's foreman, Dennis, testified that ladders were on each jobsite at all times because they were sometimes left behind to finish work being done on the previous site.

On the morning of August 27, 1968, Whisenton arrived at the Independence Boulevard site before the other plaintiffs. Whisenton walked from the front to the back of the building in an attempt to find a ladder, but was unsuccessful. He made mortar and transported it by means of the hoist. When Winters and Westerfield arrived, they looked around the building for a ladder, but were also unable to locate one. The three plaintiffs then rode the material hoist to the second deck, but the platform of the hoist collapsed before they reached the top and the plaintiffs were injured.

## STRUCTURAL WORK ACT CASE

■■ Arjack contends that it was not in charge of the work within the meaning of the Act. It first argues that it was not in charge of the particular activity resulting in plaintiffs' injuries and, therefore, is

not liable. This argument is without merit because in order to impose liability under the Act, it is not necessary that a party be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction.[1] One or more parties can have charge of the overall work, and other parties can have charge of the phase of the work in connection with which an injury occurs. In that event, all of them would have charge of the work within the meaning of the statute. *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 123, 373 N.E.2d 1348, 1353; *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 291, 226 N.E.2d 630, 642; see Illinois Pattern Jury Instructions, Civil, No. 180.02 (2d ed. 1971).

Arjack next argues that it cannot be found to be in charge of the work under the statute merely because it was the general contractor. We agree that the title held by a party is not determinative as to whether it was in charge of the work. See *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 485, 394 N.E.2d 403, 406; *Gannon v.*

---

[1] In *McGovern v. Standish* (1976), 65 Ill. 2d 54, 67, 357 N.E.2d 1134, 1141, the court stated that before a defendant may be found to be in charge of the work, "the defendant must have been in charge of the particular operations which involved the violation from which the alleged injury arose." However, in his dissenting opinion, Justice Goldenhersh stated:

"Unless this ° ° ° statement means that one in overall charge also has charge of 'the particular operations which involved the violation from which the alleged injury arose' it is clearly erroneous, ° ° ° and states precisely the opposite of IPI Civil No. 180.02." 65 Ill. 2d 54, 71, 357 N.E.2d 1134, 1143.

In *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119, 373 N.E.2d 1348, 1351, the court interpreted the "particular operations" statement in the *McGovern* majority opinion to have a meaning consistent with Justice Goldenhersh's dissent in *McGovern*. Further, in a specially concurring opinion in *Emberton*, Justice Dooley stated:

"In my opinion, it would facilitate the work of the *nisi prius* and appellate courts in this State if we overruled *McGovern v. Standish* [citation] *a nomine.* It is contrary to the language of the Structural Work Act [citation] as well as a large body of decisions of this court on the issue as to what constitutes 'in charge of.' " 71 Ill. 2d 111, 125, 373 N.E.2d 1348, 1354.

Justice Dooley took the same position in his specially concurring opinion in *Crothers v. LaSalle Institute* (1978), 68 Ill. 2d 399, 413-19, 370 N.E.2d 213, 220-23. In *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490, 394 N.E.2d 403, 407, the court affirmed what it said in *Emberton* regarding the " 'particular operations' " statement in *McGovern*. In a dissenting opinion in *Norton*, Justice Ryan recognized that owners of construction projects regularly argue that they are absolved from liability under the Act unless they are in charge of the particular phase of the operation or activity from which the injury arose. On this issue, he stated:

"Thus, although *Gannon* held that liability under the Act cannot be imposed upon an owner solely by virtue of ownership of the property, nonetheless, *the term 'having charge of' cannot be given such a narrow meaning as to require the owner ° ° ° to be in charge of the particular phase of the operation from which the injury arose.*" 76 Ill. 2d 481, 498, 394 N.E.2d 403, 411. (Emphasis added.)

This chronology of the law leads us to conclude that in order to impose liability under the Act, it is not necessary that a party be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction.

*Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 319, 323, 175 N.E.2d 785, 792, 794. The determination of whether a party is in charge of the work rests upon an assessment of the totality of the circumstances. *Norton*, 76 Ill. 2d 481, 491, 394 N.E.2d 403, 407.

■ There are numerous factors which may be considered in determining whether the totality of the circumstances supports a conclusion that a party was in charge of the work. The supervision and control of the work or the retention of the right to do so have a bearing on this question. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 322, 211 N.E.2d 247, 251.) The constant participation in ongoing activities at the construction site has also been considered as relevant on this issue. (See *Warren v. Meeker* (1973), 55 Ill. 2d 108, 112, 302 N.E.2d 54, 57.) The supervision and coordination of subcontractors may also indicate that a party was in charge of the work. (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101, 338 N.E.2d 868, 873.) A party's responsibility for taking precautions for the safety of employees at the jobsite may also demonstrate that a party was in charge of the work. (See *Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 126, 245 N.E.2d 618, 623.) Other significant factors include the authority to make changes and the right to stop the work. *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 896, 289 N.E.2d 12, 18.

In the present case, Arjack supervised the progress of the construction. Under the terms of the contract, it was to have a superintendent on the job at all times. In fact, Arjack had two superintendents on the job who participated daily in the ongoing activities at the construction project. Further, Arjack had the right to issue a stop order if the subcontractor was not performing the work in accordance with the provisions of the contract. In addition, the contract required Arjack to exercise proper precaution for the protection of persons and property and to observe the safety provisions of applicable laws and construction codes. Arjack was also responsible for the work of the subcontractors; the fact that Arjack had nothing to do with the individual employees of the subcontractors is not determinative. See *McInerney*, 62 Ill. 2d 93, 101, 338 N.E.2d 868, 873.

■ Under the circumstances, whether Arjack was in charge of the work so as to subject it to liability under the Act was an issue of fact to be decided by the jury. We believe the evidence was sufficient to support the jury's conclusion.

■■■ Arjack next contends that there was no wilful violation of the Act. A wilful violation of the Act exists if a party in charge of the work knows of the dangerous condition or by the exercise of reasonable care could have discovered the existence of the dangerous condition, and does not correct the condition. (See *Doherty v. National Casting Division Midland-Ross*

*Corp.* (1972), 6 Ill. App. 3d 329, 334, 285 N.E.2d 537, 541.) The term wilful in this context does not mean a reckless disregard of the statutory provisions. (*Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 501, 336 N.E.2d 881, 885.) In light of the evidence presented, we believe the jury could have properly concluded that Arjack was aware people were riding the material hoist and did not correct the dangerous condition, thus wilfully violating the Act.

### THIRD-PARTY ACTION

In its third-party action, Arjack claims it is entitled to indemnity from Presbitero because it was only guilty of passive misconduct while Presbitero was guilty of active misconduct. On appeal, Arjack argues that the jury's answer to the special interrogatory finding it guilty of an active violation of the Act is not supported by the evidence.

There is evidence that on many occasions the material hoist was being used as a passenger hoist. Also, pursuant to the contract, Arjack had a superintendent at the jobsites during construction. There is also testimony that an Arjack assistant superintendent rode the hoist. Under the circumstances, the jury could have properly concluded that Arjack was aware of the practice of using the material hoist as a passenger hoist, did nothing to prevent it, and on at least one occasion, actively participated in its use as a passenger hoist. This conclusion would be sufficient to support the jury's answer to the special interrogatory that Arjack's violation of the Act was active.[2]

Accordingly, the judgment in favor of the plaintiffs is affirmed and the judgment in favor of Presbitero and against Arjack in the third-party action is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.

---

[2] We also note that Justice Ryan raises a question as to whether the active-passive theory of indemnity is still viable in construction cases in view of section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1971, ch. 29, par. 61), which declares contracts or agreements for indemnity dealing with construction work void as against public policy. See *Norton v. Wilbur Waggoner Co.* (1979), 76 Ill. 2d 481, 510-11, 394 N.E.2d 403, 417-18 (Ryan, J., dissenting).