CLARENCE CRIST, Plaintiff-Appellant, *v.* DEBRON CORPORATION *et al.,* Defendants-Appellees.

Second District    No. 80-794

Opinion filed May 28, 1981.

Raymond M. Strass, of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, of Elgin, for appellant.

Casey, Krippner & Callahan, of Geneva, and Gerald M. Sheridan, Jr., of Wheaton, for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

The plaintiff, Clarence Crist, filed this action for bodily injury against defendant Summit Wholesale Supply Company (Summit) and defendant Debron Corporation alleging in count I a cause of action under the Illinois Structural Work Act and in count II a cause of action based on common law negligence. Upon Summit's motion for summary judgment, the trial court granted judgment in its favor on both counts. Subsequently, Debron Corporation was dismissed from the lawsuit with prejudice, and plaintiff now appeals only the summary judgment in favor of Summit. The issues presented on appeal are whether the trial court correctly granted summary judgment on both counts based upon his findings from the pleadings and 17 depositions that Summit was not one having charge of the operation within the meaning of the Illinois Structural Work Act and further did not owe a duty under the facts to plaintiff to base an action in negligence.

The plaintiff, an estimator and employee of Elgin Roofing, was injured on July 15, 1975, when he fell through an open skylight hole on the roof of a partially constructed one-story industrial building being built in Elgin. The steelworkers, employees of MVSS Erection Company of Illinois, a subsidiary of a division of Debron Corporation, had not completed laying the steel roof decking and were still working on the roof that day. The general contractor was Lamp, Inc., whose carpenters were also on the roof doing blocking around the roof perimeter. While some of the deposition evidence was related to whether Lamp, Inc., was "pushing" the job and therefore the skylight holes were cut and roofers and carpenters on the roof beginning work earlier than the normal custom and practice before the steelworkers were completed, this was more pertinent to the action against Debron Corporation and is unnecessary to further recite for the purposes of the issues in this appeal directed against Summit. Summit is a roofing supply company which sold and delivered roofing materials and equipment. It further provided "skyhook" service upon request of a customer which consisted of providing an operator and a truck with a crane on it which could be used to lift the roofing material to the roof. The customer was to provide workers on the ground to load the bundles of roofing onto the end of the crane and workers on top of the building to direct the depositing of the roofing material and to unload it.

The standard procedure and the procedure used on the day of the accident was that the operator would park the tractor and trailer as directed by the customer, set the crane downrigger, unfold the crane boom, unstrap the load, and wait for the roofers to begin. Roofers on the ground would then take the sling, put it around the two bundles of insulation and loop the sling ends over the hook of the crane. When the

ground roofers moved out of the way, the crane operator lifted the load into the air and waited for direction by voice or hand signal from a man on the roof. He would then maneuver to set the load down as directed. When the load got down on the roof someone had to unhook it. The load could not be unhooked before it was resting on the roof because the weight on the sling would not allow it. While the load was on the roof, the groundmen put the straps around two more bundles for the next load. The "sling" involved consisted of two individual woven nylon straps. The straps are each 30 feet long and 4 inches wide. They had a loop in each end made by hemming the end to make a flat loop. The end was passed under the bundles which had a two to three inch clearance under them. The two loops were placed on the crane hook. When lifted by the crane, the straps closed to hold the load.

Elgin Roofing had previously ordered roof insulation from Summit to be delivered on July 15. Mike Bellettiere, an employee of Summit and a crane operator, had arrived that day with a 40-foot trailer full of bundles of roof insulation and a truck-tractor with a crane on it. Lawrence Clary, a foreman for Elgin Roofing, had been told by plaintiff that the insulation would arrive that day. Clary told Bellettiere where to park his truck and to set the insulation down on the east side of the roof because that's where the decking had been finished. Clary directed the other roofers at the site. The bundles were placed on the roof in a row, the third bundle being placed three or four feet south of the first of a row of six open skylight holes. The fourth bundle was placed between the first skylight hole and a second skylight hole. It was at this time that the plaintiff first assisted in the unstrapping, although that was not part of his job as he was a job estimator and supervisor.

There were three roofers below. One stood on the ground and pushed the straps through under the bundles with a stick or rod. Two others got up on the truck to loop the straps over the bundles and hook the ends on the crane hook. They then got off the truck and stood out of the way. The crane operator lifted the load in the air when he saw they were out of the way. Clary and Monroe Shales, also an employee of Elgin Roofing, were on the roof unloading the bundles. A bundle was unloaded by unhooking the straps and then pulling the straps out.

The plaintiff then began helping unstrap a bundle that had just been placed on the roof some 4 to 15 feet south of the second skylight hole. Plaintiff took ahold of one of the straps which had been unhooked and the next thing that happened was that he fell through a skylight hole. Plaintiff now has no recollection of the day of the accident. One carpenter from Lamp, Inc., Kim Petschow, saw plaintiff walking backwards while pulling a strap from a bundle, but Petschow turned before the accident occurred. When he turned around after hearing Clary yell, plaintiff was gone.

Clary did not see plaintiff fall although they both were pulling on the same strap to pull it from the bundle. No one else witnessed the actual fall.

The depositions further disclose that Bellettiere, the crane operator, was the only Summit employee involved in this operation and that his function was to deliver the roofing insulation and place it on the roof as directed by Elgin Roofing. By prior practice the customer, Elgin Roofing, had to supply the personnel to strap the roofing material, direct the crane operator where to land it and unload it. Bellettiere on this occasion did not go onto the roof, but placed the bundles as directed by employees of Elgin Roofing. However, Bellettiere was solely in charge of the actual operation of the crane. There is no evidence in the depositions that the crane sling gave way or the load shifted or fell, or that the strap plaintiff was pulling on was defective or didn't come out smoothly, or that the crane was improperly operated.

First, we address the issue of whether the trial judge was correct in granting summary judgment for the defendant in the count based on the Structural Work Act. The goal of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) is to provide workmen in extra-hazardous occupations with a safe place to work and protection is given only to those related to construction work or activity. (*Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466.) The tendency of the courts in Illinois is to liberally construe the Act to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction, repairing, alteration or removal of buildings, bridges, viaducts, and other structures. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573.) The sections of the Act pertinent to this appeal are:

" §1. That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.

\* \* \*

§9. Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with

all the terms thereof, * * *." Ill. Rev. Stat. 1979, ch. 48, pars. 60, 69.

Plaintiff contends that there was sufficient evidence in the depositions to show that Summit was one of the persons having charge of the phase of the operation in which plaintiff was injured to present a question of fact to the jury. Summit contends that it had no control over the condition of the building roof, that it was not in charge of anything but delivery of roofing insulation and operation of the crane used to lift that material to the roof, nor did it commit any violation of the Act.

The issue of who has charge of the work is generally a fact question for the jury. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) However, this issue may be determined as a matter of law where the evidence presented is insufficient to create a factual question. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 486, 394 N.E.2d 403.

A motion for summary judgment should be granted where there is no genuine issue as to any material fact. The court is to determine the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) Along with the pleadings, we have considered the depositions of 17 persons.

Recent cases presented to our supreme court under the Structural Work Act which have considered the issue of whether a defendant has charge of the work have been concerned with the defendant's general right to supervise the entire project rather than the control over a specific phase of the work. (*E.g., Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403—a school district's liability; *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348—an architect's and owner's liability; *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134—an architect's liability.) Under the facts in those cases, it is not necessary that a party be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction. One or more parties can have charge of the overall work, and other parties can have charge of the phase of the work in connection with which an injury occurs. In that event, all of them would have charge of the work within the meaning of the statute. (*Westerfield v. Arjack Co.* (1979), 78 Ill. App. 3d 137, 397 N.E.2d 451.) The issue in this appeal, however, arises in a different context from those cited cases, and is directed against Summit who is alleged to be in charge of a specific phase of the operation.

The Structural Work Act violation pleaded by plaintiff alleged "the

defendants participated in the erection and construction of a certain scaffold, then and there being used as a temporary support, to facilitate and be used in the said erection and construction." Plaintiff's entire complaint is in general terms and does not further particularize the scaffold nor the phase of the construction work other than to allege that "defendants * * * were in charge of the erection and construction of a certain building * * *." We construe this complaint to allege that the scaffold complained of is the roof itself, and this was conceded by plaintiff in oral argument. A roof has been held to be a scaffold within the meaning of the Act. *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213; *St. John v. R. R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740.

The only two cases cited and relied upon by plaintiff to support his action under the Structural Work Act are inapposite to this case. Both of the cited cases were brought under the Structural Work Act, involved cranes doing hoisting and concerned who had charge of particular work. However, they are clearly distinguishable as the violation of the Act complained of and the injury arose from the actual operation of the crane itself and did not involve a separate scaffold.

*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60, presented the primary issue of whether the operator of a crane which during its operation caused a beam to fall and knock plaintiff in a hole was defendant's employee. Only after deciding that the jury properly concluded that the crane operator was defendant's employee and had charge of the crane operation did it then address itself to the alleged violation of the Act, the operation of the crane. From our examination of *Gundich* it is clear that the alleged violation of the Act was in the operation of the crane.

Similarly, plaintiff's second citation, *Yankey v. Oscar Bohlin & Son, Inc.* (1962), 37 Ill. App. 2d 457, 186 N.E.2d 57, presented the factual issue of whether a crane operator was an employee of the defendant Bohlin or another defendant, Northwestern Excavators. This case also was one brought under the Structural Work Act and alleged a violation of the Act based upon the operation of the crane. These cases being no help, we focus our attention on cases relevant to a subcontractor's liability for violations of the Act as applied to scaffolds.

Under the holding of several appellate court decisions, a plaintiff may successfully sue a subcontractor under the Structural Work Act, as for example, an injured steelworker sued a masonry contractor in *Reed v. Johnson* (1965), 55 Ill. App. 2d 67, 204 N.E.2d 136, and an injured metal worker sued a carpentry subcontractor in *Lawler v. Pepper Construction Co.* (1961), 33 Ill. App. 2d 188, 178 N.E.2d 687. In both of those cases the defendant furnished the defective scaffold and had charge of some other

phase of the construction project even though it was not doing the work at the time of the accident. However, as normally one subcontractor does not have charge of another subcontractor's work, liability under the Act has been extended in these situations if the defendant subcontractor furnished the injuring device and has charge of some other phase of the construction project involving the scaffold. (*Walsh v. Dream Builders, Inc.* (1970), 129 Ill. App. 2d 280, 264 N.E.2d 247.) In *Walsh*, plaintiff, a plasterer's helper, was injured doing his work while using a temporary stairway proved to be placed there by defendant, a carpentry subcontractor, not performing work there on the day of the accident. The appellate court upheld a verdict for plaintiff even though the defendant was not in charge of the work being done at the time of the accident. Although our supreme court has not yet directly considered this test of a subcontractor's liability which allows recovery even when the subcontractor is not working there at the time of the accident, it has distinguished this line of cases on the ground that the party against whom liability was asserted participated to some extent in an ongoing activity protected by the Act. (*Warren v. Meeker* (1973), 55 Ill. 2d 108, 112, 302 N.E.2d 54.) And it also has held that liability will not attach to one who merely furnishes possibly defective equipment which causes an accident. (*Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 157-58, 265 N.E.2d 134.) Nevertheless, our supreme court has clearly ruled that to establish liability under the Act an owner or other person must have been in charge of the operation *which involved the violation from which the injury arises. (Warren v. Meeker* (1973), 55 Ill. 2d 108, 111, 302 N.E.2d 54; *Gannon v: Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 323, 175 N.E.2d 785.) And, as pointed out in a slightly different context in *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119, 373 N.E.2d 1348, clarifying *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134:

"If the language in the majority opinion in *McGovern* was intended to mean that it may be shown that a person was 'in charge of the particular operations which involved the violation from which the alleged injury arose' (65 Ill. 2d 54, 67) either by proof that he exercised control, or that the right to control the work existed, whether exercised or not, it correctly states the law."

■■ Summit neither furnished the scaffold nor was it in charge of the operation of the scaffold from which the injury arose. The structural work which plaintiff's complaint alleged to be unsafe was a scaffold which under the deposition evidence is a roof with skylight holes in it. Under this evidence Elgin Roofing who was installing the roof, Debron Corporation who was doing the steel work and Lamp, Inc., the general contractor all may have had charge of the operation which involved an alleged unsafe

scaffold. More than one person may have charge of work. (See *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) Yet there is no evidence here that Summit was to do anything other than supply roofing insulation and hoist it to the top of the roof. None of its employees were involved in the roof construction or the work on the roof, nor were they even physically on the roof. The only Summit employee present was operating a crane, and under the facts neither the operation of the crane was improper nor was Summit through its employees in charge of work on the roof. The trial court properly decided as a matter of law that Summit did not have charge of any phase of work on the roof, nor the right to control the operation which involved the alleged violation from which plaintiff's injury arose.

■■ Briefly, we examine plaintiff's second contention that the trial court erred in granting summary judgment for Summit on the count based upon common law negligence. To sustain an action for negligence, plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.) Plaintiff concedes in his brief that Summit would owe no duty to him if it is not in charge of the operation. And plaintiff has failed to cite any authority to support his contention on appeal that the trial court erred in granting summary judgment on this count, contrary to Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7)). Under the evidence before us, plaintiff has failed to show as a matter of law that a duty was owed to him by Summit to provide a safe working area on the roof, nor has he shown any negligent act committed by Summit.

Accordingly, the judgment of the trial court is affirmed on both counts.

Affirmed.

NASH and HOPF, JJ., concur.