Louis GUGLIELMUCCI and Kathy
Guglielmucci, Plaintiff,

v.

MARC DEVELOPMENT
CORPORATION, et
al., Defendants.

MARC DEVELOPMENT CORPORATION
and Regency Plaza Partnership, Ltd.,
Third party plaintiffs,

v.

M. ECKER & COMPANY, Carpentry Col-
laborative, Inc., Near North Insurance
Agency, Inc., and New Hampshire Insur-
ance Company, Third party defendants.

JONES & BROWN COMPANY,
INC., Third party plaintiff,

v.

M. ECKER & COMPANY and Carpentry
Collaborative, Inc., Third party
defendants.

No. 90 C 5951.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1993.

Daniel Herbert Streckert, Louis C. Cairo, Goldberg, Weisman and Cairo, Ltd., Chicago, IL, for plaintiff Louis Guglielmucci.

Tony G. Westin, Jerome G. McSherry & Associates, Chicago, IL, for defendants Marc Development Corp., Regency Plaza Partnership.

Larry Selander, John Allison Jeffries, Dennis J. Powers, Keck, Mahin & Cate, Chicago, IL, for defendants Jones and Brown Co., Inc.

Robert Marc Chemers, Robert J. Franco, II, Donald J. Kindwald, Pretzel & Stouffer, Chtd., Chicago, IL, for defendants M Ecker & Co., Near North Ins. Agency Inc., New Hampshire Ins. Co.

Alfred M. Swanson, Jr., Mitchell Ware, Gerald David Zansitis, Jones, Ware & Grenard, Chicago, IL, for Carpentry Collaborative, Inc., third-party defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Louis and Kathy Guglielmucci brought this action pursuant to the Illinois Structural Work Act (Act) as a result of injuries Louis suffered while working on the Regency Plaza Project (project). The Guglielmuccis named as defendants the project's owner, Regency Plaza Partnership (Regency), the project's general contractor, Marc Development Corporation (Marc), and Jones & Brown Company (Jones & Brown). Marc and Regency filed a third party complaint against M. Ecker & Company (Ecker) and Carpentry Collaborative, Inc. (Carpentry), among others. Marc and Regency argue that if found in violation of the Act they

would be entitled to contribution from Ecker and Carpentry. Jones & Brown subsequently filed a second amended third party complaint against Ecker and Carpentry. Jones & Brown also argues that if found in violation of the Act it would be entitled to contribution from Ecker and Carpentry. Third party defendant Carpentry now moves for summary judgment in the complaint of Marc and Regency, and in Jones & Brown's second amended complaint. Third party defendant Ecker moves for summary judgment in Jones & Brown's second amended complaint. For the reasons stated below, Carpentry's motion is granted in part [1] and denied in part, and Ecker's motion is denied.

### FACTS

In the Guglielmuccis' complaint of October 12, 1990, they allege that Louis suffered injuries in an accident on September 25, 1990, when he fell through an opening in the metal decking upon which he was working. Gil Connelly (Connelly), Marc's project manager, had directed the creation and covering of the opening. As general contractor for the project, Marc had contracted with Ecker for the carpentry work. Ecker subsequently subcontracted the carpentry work to Carpentry—Mr. Guglielmucci was working for Carpentry at the time of his injury.

The motions for summary judgment by third party defendants Ecker and Carpentry concern two particular elements of the Act: first, that the Act applies to "[a]ny owner, contractor ... [or] sub-contractor ... having charge of the ... construction ... of any building" included in its provisions; and second, that the Act creates a right of action for injuries resulting from "any wilful violations ... or wilful failure to comply with any of its provisions." 740 ILCS 150/9 (Michie 1993).

### DISCUSSION

1. **Carpentry's Motion Against Marc, Regency, and Jones & Brown**

Carpentry contends that it cannot be liable under the Act because any violations on its part lacked the necessary ele-

---

1. Marc and Regency failed to respond to Carpentry's motion. Therefore, this court grants Carpentry's motion for summary judgment in their action. Fed.R.Civ.P. 56(e).

ment of willfulness. A willful violation of the Act occurs when one having charge of work either knows that a dangerous condition exists or could have discovered it by exercising reasonable care. *Simmons v. Union Elec. Co.,* 121 Ill.App.3d 743, 77 Ill.Dec. 169, 460 N.E.2d 28 (1984), *aff'd, Simmons v. Union Elec. Co.,* 104 Ill.2d 444, 85 Ill.Dec. 347, 473 N.E.2d 946. Willfulness is primarily a factual question for the jury to decide. *Brazier v. Kontos,* 160 Ill.App.3d 177, 111 Ill.Dec. 906, 513 N.E.2d 152 (1987); *Isabelli v. Cowles Chemical Co.,* 7 Ill.App.3d 888, 289 N.E.2d 12, 18 (1972).

In Carpentry's original motion it states that it was not involved with placing the metal decking on the roof or creating the opening through which Mr. Guglielmucci fell. (Turcotte Dep. at 93.) Wayne Turcotte, Carpentry's jobsite foreman, denies that he knew about the opening before the accident. However, Connelly testifies in his deposition that on three separate occasions he informed Turcotte about the opening. (Connelly Dep. at 89–93.) Therefore, Jones & Brown argues, any Carpentry violation of the Act was willful.

■ In a motion for summary judgment facts are construed in favor of the non-moving party, here Jones & Brown. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991). Carpentry apparently concedes this when it states that for purposes of its motion this court should assume that Turcotte "was advised of the hole in the roof by Mr. Connelly." (Reply Mem. at 2.) It argues, however, that this court should still enter summary judgment in its favor because even if Turcotte knew about the opening he did not know it represented a dangerous condition. Moreover, Ecker contends, Turcotte conducted a reasonable inspection of the deck without discovering the condition, which shows it could not have been discovered through the exercise of reasonable care.

■ Carpentry attempts to distinguish between knowledge of the opening and knowledge that it represented a dangerous condition. In Connelly's deposition, though, he explains that the reason he informed Turcotte of the opening was because of "possible hazards." (Connelly Dep. at 93.) Unlike Carpentry, Connelly does not distinguish between the existence of the opening and the existence of a dangerous condition. Moreover, Carpentry does not cite any cases that distinguish between knowledge of an injury-causing condition and knowledge that the condition was dangerous. *See, e.g., Brazier,* 111 Ill.Dec. at 910, 513 N.E.2d at 156 (defendants could have discovered electrical wires); *Simmons,* 77 Ill.Dec. at 177, 460 N.E.2d at 36 (defendant had opportunity to learn about oily conditions caused by floods). This court is not prepared to decide, as a matter of law, that knowledge of an opening in a metal deck upon which men are working is distinguishable from knowledge of a dangerous condition. Turcotte's alleged knowledge of the opening could constitute knowledge of a dangerous condition under the Act.

Carpentry further contends that even if the opening was a dangerous condition, it could not have discovered the condition by exercising reasonable care. As proof of its contention, Carpentry presents Turcotte's testimony of his inspection of the deck. (Turcotte Dep. at 61–65.) However, based upon Turcotte's description of his inspection, this court is not prepared to decide as a matter of law that it was reasonable.

In *Simmons,* the court held that the defendant could have learned of the slippery conditions left by flooding because it was a periodic occurrence, rather than a momentary problem. 77 Ill.Dec. at 177, 460 N.E.2d at 36. Here there is evidence that the opening was in existence for at least 14 days. (Connelly Dep. at 74–75.) Therefore, the opening was not momentary and occurred more often than periodically—it was an ongoing condition. In *Brazier,* the court held that since the defendants were on the jobsite every day, and on the location of the accident at least twice, they could have discovered the electrical wires that injured the plaintiff. 111 Ill. Dec. at 910, 513 N.E.2d at 156. Here there is evidence that Turcotte was on the jobsite throughout Carpentry's work and was on the location of the accident at least once. Any differences between those cases and this case

are not so great as to permit summary judgment in favor of Carpentry on the issue of willfulness. Therefore, Carpentry's motion as to Jones & Brown's second amended complaint is denied.

### 2. *Ecker's Motion Against Jones & Brown*

■ Ecker first argues that the Act does not apply to it because it was not a subcontractor "having charge of" the construction that was the site of Mr. Guglielmucci's injuries. Illinois courts generally consider the following factors in determining whether an entity is one "having charge of" a project: (1) actual supervision or control of the work or coordination of subcontractors; (2) constant participation in ongoing activities at the construction site; (3) ownership of the equipment used on the jobsite; (4) retention of the right to supervise, control, or stop the work; (5) authority to issue change orders; (6) responsibility for taking safety precautions at the jobsite; (7) opportunity to assure worker safety or to alleviate equipment deficiencies or improper work habits; and (8) familiarity with construction customs and practices. *Zukauskas v. Bruning*, 179 Ill.App.3d 657, 128 Ill.Dec. 498, 534 N.E.2d 680 (1989); *Simmons*, 77 Ill.Dec. at 175–76, 460 N.E.2d at 34–35. This determination is ordinarily for the jury, but summary judgment is appropriate when the evidence fails to present a factual question. *Zukauskas*, 128 Ill.Dec. at 500–501, 534 N.E.2d at 682–83; *Crist v. Debron Corp.*, 96 Ill.App.3d 668, 52 Ill.Dec. 134, 137, 421 N.E.2d 997, 1000 (1981).

■ Illinois courts have held that a party may be in charge of work under the Act if it either exercises control or retains the right to supervise or control the work, regardless of whether that right was actually exercised. *Emberton v. State Farm Mut. Auto. Ins. Co.*, 71 Ill.2d 111, 15 Ill.Dec. 664, 667, 373 N.E.2d 1348, 1351 (1984); *Schroeder v. C.F. Braun*

& Co., 502 F.2d 235, 242 (1974); *Buehler v. Toynan Construction Co.*, 52 Ill.2d 214, 287 N.E.2d 691, 693 (1972); *accord Chance v. City of Collinsville*, 112 Ill.App.3d 6, 67 Ill. Dec. 747, 751, 445 N.E.2d 39, 43 (1983) (defendant did not have charge because it did not have authority to supervise or control). These supervisory powers must exceed the right to observe or terminate the work. *Manisco v. Marseilles Fire Protection Dist.*, 132 Ill.App.3d 390, 87 Ill.Dec. 557, 559, 477 N.E.2d 534 (1985) (defendant's supervisory powers were insufficient to find it in charge of the work).

■ In *Buehler* and *Schroeder*, the defendants contracted to complete work but subsequently subcontracted it to other companies. 287 N.E.2d at 693; 502 F.2d at 242. In *Buehler*, defendant Roeth met only once with the company with which it had a subcontract. However, the court held there was a factual issue as to whether Roeth was in charge of the work because Roeth assumed the right to control the work in its original contract. 287 N.E.2d at 693.[2] In *Schroeder*, defendant Fluor did not have employees at the worksite, but the court upheld the jury's finding that Fluor was in charge of the work. The court based its conclusion on Fluor's original contractual obligations to comply with the owner's and general contractor's safety rules, obey applicable laws, conduct inspections, and observe safety precautions. 502 F.2d at 242. Additionally, the subcontract gave Fluor access to the work and the right to inspect it. *Id.*

In this case, as in *Buehler* and *Schroeder*, Ecker contracted to do work but subsequently subcontracted to Carpentry. The evidence indicates that Ecker did not supervise or control Carpentry's work.[3] (Zubricki Dep. at 61–63.) Ecker did not participate constantly in ongoing activities at the construction site.[4] (Zubricki Dep. at 37.) The

---

**2.** The court in *Buehler* actually states that because the defendant contracted to do work it "assumed the right to control the work." It is unclear whether the court is gleaning the defendant's right to control from its obligations under the original contract or its rights under the subcontract. However, in accord with the list of factors provided by many Illinois courts, this

court will consider both factors as they relate to Ecker.

**3.** Thus the first factor from the above list, actual supervision or control of the work, is absent here.

**4.** The second factor, constant participation in ongoing activities, is therefore also absent.

only evidence of Ecker's participation in on-going activities is the infrequent attendance at jobsite meetings by Howard White, an Ecker employee. (Jones & Brown Stmt.Exh. A.) Ecker's lack of supervision or control, and minimal participation in ongoing activities, closely resembles the roles of the defendants in *Buehler* and *Schroeder*. Applying *Schroeder* to these facts, a finding that Ecker was in charge of the work is permitted if it had certain obligations in its original contract or rights in its subcontract. Applying *Buehler*, there is a factual issue as to whether Ecker was in charge of the work if it retained certain rights in its subcontract regarding Carpentry's work.

Ecker's obligations in its original contract are of particular interest as they relate to safety, which is the Act's main concern. In Ecker's original contract with Marc there is evidence that it assumed responsibility for work safety by agreeing to obey applicable laws and regulations, comply with safety requirements, and to be responsible for others' compliance.[5] (Ecker Stmt.Exh. D.) These obligations are similar to Fluor's obligations in *Schroeder* to obey applicable laws, comply with safety rules, and observe safety precautions.

Concerning Ecker's rights in its subcontract with Carpentry, Ecker contends that it could not stop Carpentry's work, (Zubricki Dep. at 58, 63), and did not have the right to supervise it. (Zubricki Dep. at 60.) However, Jones & Brown points to provisions from the master subcontract between Ecker and Carpentry as evidence that Ecker did retain the right to supervise or control Carpentry's work. (Ecker Stmt.Exh. E.) One such right allowed is that Ecker may require the removal of any Carpentry employee. (Ecker Stmt.Exh. E at Art. 20.) Another grants Ecker authority to inspect or condemn any work it deems "unsound or improper."[6] (Ecker Stmt.Exh. E at Art. 31.) These

rights exceed Fluor's rights in *Schroeder* to conduct inspections and gain access to the work. Ecker also argues that it never performed safety functions (Zubricki Dep. at 60–61), and it was not involved with safety. (Zubricki Dep. at 63–64.) However, there is evidence that Ecker retained safety and inspection responsibilities, could have instituted additional safety precautions, and required Carpentry to comply with its safety rules.[7] (Ecker Stmt.Exh. E.)

Because there is evidence in Ecker's original contract of its responsibility for the safety of Carpentry's work, and evidence in its subcontract of the right to supervise or control the work, under *Buehler* and *Schroeder* there is a factual question as to whether Ecker had charge of the work.

Illinois courts have considered additional factors present in this case to determine whether a party had charge of work. *Westerfield v. Arjack*, 78 Ill.App.3d 137, 33 Ill. Dec. 945, 397 N.E.2d 451 (1979) (evidence was sufficient to support jury's conclusion that the defendant, a general contractor, was in charge of the work); *Emberton*, 15 Ill.Dec. at 669, 373 N.E.2d at 1353 (evidence was sufficient for jury to find that defendant was in charge of the work). In *Westerfield*, the court took into consideration the defendant's obligation to pay for and provide all materials, labor, tools, and equipment. 33 Ill.Dec. at 950, 397 N.E.2d at 456. In this case there is evidence that Ecker agreed to provide labor, materials, licenses, and clean-up (Ecker Stmt.Exh. D), and actually purchased and supplied materials. (Zubricki Dep. at 28.) In *Emberton*, the court considered the fact that the defendant ordered periodic changes in the work. 15 Ill.Dec. at 668–69, 373 N.E.2d at 1352–53. There is evidence in this case that Ecker initiated periodic change orders.[8] (Jones & Brown Stmt.Exh. C.) The evidence of these factors[9] further supports

---

5. Therefore, there is evidence of the sixth factor, responsibility for taking safety precautions at the job-site.

6. This is evidence of the fourth factor: retention of the right to supervise, control, or stop the work.

7. This is additional evidence of the sixth factor, responsibility for safety, and evidence of the seventh factor, opportunity to assure worker safety.

8. This is evidence of the fifth factor, authority to issue change orders.

9. Overall, there is evidence of three of the factors generally considered by Illinois courts. There is

this court's conclusion that there is a factual question as to whether Ecker had charge of the work under the Act.

In light of the above conclusions this court is not prepared to decide as a matter of law that any violations of the Act by Ecker were not willful. Therefore, Ecker's motion for summary judgment is denied.

### CONCLUSION

For reasons hereinabove stated, Carpentry's motion for summary judgment is granted as to the third party complaint of Marc and Regency and denied as to Jones & Brown's second amended complaint. Ecker's motion for summary judgment is denied.

also evidence that Ecker is familiar with construction customs and practices, satisfying the eighth factor. However, this court agrees with the court in *Burger v. Prairie Development, Ltd.,* 218 Ill.App.3d 814, 161 Ill.Dec. 467, 474, 578 N.E.2d 1113, 1120 (1991), that the eighth factor is too general to be useful in this analysis.